**FILED**

**July 31, 2015**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 7:15 AM**



## COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| **Michael Callahan,** ) | **Docket No.: 2015-01-0068** |
| **Employee,** ) | |
| **v.** ) | **State File No.: 27263 / 2014** |
| ) | |
| **Amazon.com, Inc.,** ) | **Date of Injury: July 8, 2015** |
| **Employer,** ) | |
| **And** ) | **Judge: Thomas Wyatt** |
| ) | |
| **Sedgwick CMS** ) | |
| **Insurance Carrier/TPA.** ) | |
| ) | |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

THIS CAUSE came to be heard for an in-person hearing before the undersigned Workers' Compensation Judge on July 2, 2015, upon the Request for Expedited Hearing that the employee, Michael Callahan, filed May 6, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014). Mr. Callahan sought to determine whether the employer, Amazon.com, Inc. (Amazon), is obligated to provide medical benefits for a left-shoulder injury that he allegedly sustained on July 8, 2015, while performing duties arising out of and in the course and scope of his employment at Amazon. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Mr. Callahan is entitled to the requested medical benefits.

## ANALYSIS

### Issues

The parties presented the following issues for determination at the Expedited Hearing:

1

1. *Whether Mr. Callahan sustained a left-shoulder injury that arose primarily out of and in the course and scope of his employment with Amazon.*

2. *Whether Mr. Callahan is entitled to medical benefits.*

The Mediation Specialist marked numerous issues on the Dispute Certification Notice (DCN) issued in this claim. The Court did not decide issues marked on the DCN unless presented for determination at the Expedited Hearing.

## Evidence Submitted

The Court admitted into evidence the exhibits identified below:

1. Affidavit of H. Franklin Chancey, attorney for Mr. Callahan, with the following exhibits attached thereto:
   - an Order Denying Workers' Compensation Benefits in *Michael Callahan v. Integrity Staffing Solutions,* State File No. 79685-2014;
   - Benefit Review Report issued in *Michael Callahan v. Integrity Staffing Solutions*, State File Number 79685-2014; and
   - email of May 19, 2015, from Cheryl Ploeger to Jeannie Pittman.

2. Affidavit of Michael Schock
3. Mr. Callahan's responses to Defendant's First Requests for Admission;
4. Mr. Callahan's responses to Interrogatories;
5. Medical records from Amcare;
6. Affidavit of Michael Callahan;
7. Benefit Review Report in *Michael Callahan v. Amazon,* State File Number 77773-2014;
8. Associate First Report of Injury form dated June 2, 2014; and
9. First Report of Injury listing Amazon as the employer and the date of injury as July 8, 2014.

The Court designated the following as the technical record:

- Petition for Benefit Determination (PBD), filed April 10, 2015;
- DCN, filed May 11, 2015; and
- Request for Expedited Hearing, filed May 19, 2015.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments thereto as allegations unless established by the evidence.

2

Mr. Callahan provided the only in-person testimony at the Expedited Hearing.

## History of Claim

### *Procedural History*

Mr. Callahan first worked at Amazon's Charleston, Tennessee facility as an employee of Integrity Staffing Solutions (Integrity), a temporary employment agency (Ex. 2, p. 1). He converted from an Integrity employee to an Amazon employee on June 29, 2014 (Ex. 2, p. 2). Mr. Callahan first reported left-shoulder pain on June 2, 2014, while an Integrity employee (Ex. 5, p. 2).

Mr. Callahan initially sought benefits for his left-shoulder injury through the Benefit Review process. He withdrew an RFA naming Amazon as employer because Amazon claimed he was not an Amazon employee on the date of injury and that he did not report a left-shoulder injury after Amazon hired him (Ex. 1). Mr. Callahan then filed an RFA naming Integrity as employee (Ex. 1).

On January 21, 2015, a Specialist for the Bureau of Workers' Compensation found that Mr. Callahan was not entitled to additional benefits for his June 2, 2014 left-shoulder injury because that injury fully resolved (Ex. 1, pp. 3-7). Undeterred, on April 10, 2015, Mr. Callahan filed a PBD in this Court seeking benefits against Amazon for the July 8, 2014 left-shoulder injury.

### *Factual History*

On June 2, 2014, Mr. Callahan reported left-shoulder pain while working for Integrity. On that date, he completed and signed an Associate First Report of Injury in which he described the mechanism of his injury as follows: "pushing boxes down line and shoulder popped" (Ex. 8).

Amcare is an on-site first aid center available to both Integrity and Amazon employees. Mr. Callahan received treatment at Amcare immediately after the June 2, 2014 injury (Ex. 5, p. 5). The attending emergency medical technician (EMT) applied ice and returned Mr. Callahan to work (Ex. 5, p. 5). Mr. Callahan returned to Amcare on June 3 and 6 (Ex. 5, pp. 6-7). He reported on June 7, that he was no longer experiencing left-shoulder pain (Ex. 5, p. 7).

On July 8, 2014, Mr. Callahan reported another incident of pain in his left shoulder while working at Amazon (Ex. 5, p. 8). On this date, he was an Amazon employee (Ex. 2, p. 2). Amazon management sent Mr. Callahan to Amcare, where the EMT noted "that it is a re-aggravation from his injury on 06/02" (Ex. 5, p. 8). The EMT treated Mr. Callahan's left shoulder with ice and released him to return to work (Ex. 5, p.

8). Mr. Callahan returned to Amcare on July 11, at which time he reported no left-shoulder pain (Ex. 5, p. 9).

Mr. Callahan continued working for Amazon for several weeks following the July 8 incident. He testified that the job he performed immediately following the July 8, incident did not require him to use his left shoulder and, as such, the performance of that job did not cause left-shoulder pain. Mr. Callahan testified, however, that his left-shoulder pain increased over time as he continued to work at Amazon (Ex. 6, p. 2), but that he did not mention this fact to Amazon's management because Amazon tended to dismiss employees if they were hurt. Amazon eventually terminated Mr. Callahan (Ex. 4, p. 2). Mr. Callahan claims that Amazon terminated him because he "could not hold rate due to my shoulder (Ex. 4, p. 2).

Mr. Callahan testified that, after Amazon terminated him, he performed lawn care and pressure washing for private individuals and worked for other employers through another temporary employment agency. Mr. Callahan claimed that his subsequent employment did not require him to use his arm in an overhead fashion and that he did not further injure his left shoulder.

Mr. Callahan testified that, due to left-shoulder pain, he is currently unable to lift his left arm over his head and cannot chop wood. He testified he has turned down employment requiring overhead work with the left arm. He finally testified that, due to lack of funds and insurance coverage, he has not obtained treatment or evaluation of his left-shoulder symptoms since terminated by Amazon.

## Mr. Callahan's Contentions

Mr. Callahan claims that he gave Amazon timely notice of his July 8, 2014 left shoulder injury. He contends that he contends that only a physician can address whether the injury he sustained while working for Integrity, or the injury he sustained while working for Amazon, entitles him to workers' compensation benefits. Mr. Callahan argues Amazon's claim that he did not report an injury while employed by Amazon is false and delayed his access to medical benefits, Accordingly, he claims that Amazon should bear the cost of the treatment and evaluation of his injury.

## Amazon's Contentions

Amazon claims Mr. Callahan has the burden of proving by expert medical opinion that his left-shoulder injury arose primarily out of and in the course and scope of employment. It claims that the only medical records introduced at the Expedited Hearing contain no expert medical opinion on the causation issue. Accordingly, Amazon contends that Mr. Callahan failed to meet his burden of proof and is not entitled to an award of medical benefits.

Amazon also contends that, because Mr. Callahan told Amcare on July 11, 2014, that he was not experiencing pain from his July 8, 2014 incident of left-shoulder pain, any injury he sustained at Amazon was a temporary re-aggravation of the earlier injury he reported while working for Integrity. Therefore, Amazon contends that it fully discharged its workers' compensation obligations by affording Mr. Callahan treatment at Amcare.

## Findings of Fact and Conclusions of Law

### *Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

### *Factual Findings*

Upon consideration of the testimony in open court, the exhibits introduced by the parties, the argument of counsel for the parties, and the record in this claim, the Court makes the following factual findings in the Expedited Hearing conducted July 2, 2015:

- On June 2, 2014, Mr. Callahan reported pain in his left shoulder while performing duties in the course and scope of his employment by Integrity at Amazon's Charleston, Tennessee facility;
- Integrity sent Mr. Callahan to Amcare for treatment of his June 2, 2014 left-shoulder pain;
- On June 6, 2014, Mr. Callahan reported to Amcare that he no longer experienced left shoulder pain;
- On June 24, 2014, Amazon hired Mr. Callahan as a permanent Amazon employee;
- On July 8, 2014, Mr. Callahan reported that he re-aggravated his left shoulder-pain while performing duties assigned him by Amazon;
- Amazon sent Mr. Callahan to Amcare for treatment of his July 8, 2014 left-shoulder pain;

5

- On July 11, 2014, Mr. Callahan reported that he no longer experienced left shoulder pain;
- On an uncertain date between July 11, 2014, and October 6, 2014, Amazon terminated Mr. Callahan;
- On October 6, 2014, Mr. Callahan filed an RFA, naming Amazon as his employer and seeking benefits for a left-shoulder injury;
- On October 7, 2014, Cheryl Ploeger, a Mediation Specialist, reported to Mr. Callahan's counsel that an Amazon representative told her Amazon did not have documentation that Mr. Callahan sustained an injury after he converted from an Integrity employee to an Amazon employee;
- Mr. Callahan withdrew the RFA naming Amazon as employer shortly after Ms. Ploeger's report;
- On November 24, 2014, Mr. Callahan filed an RFA, naming Integrity as employer and seeking benefits for a left-shoulder injury;
- On January 21, 2015, a Specialist found that Mr. Callahan was not entitled to workers' compensation benefits for his June 2, 2014 left-shoulder injury because the injury fully resolved before Mr. Callahan converted from an Integrity employee to an Amazon employee.

### Application of Law to Facts

The issues raised in this Expedited Hearing require the balancing of an injured employee's right to receive medical benefits for a reported work-related injury with an employer's right to require that the employee prove his claim. The Workers' Compensation Appeals Board considered a similar issue in *McCord v. Advantage Human Resourcing, supra.*

The appeals board in *McCord* rejected the employee's argument that her report of a work injury, standing alone, triggered the employer's duty to provide medical benefits. *McCord,* at *7. In reliance on the fact that Tenn. Comp. R. & Regs. 0800-02-14-.04 (2013) provides an employer fifteen days after its receipt of notice of a claimed work injury to investigate compensability, the appeals board held that an employer may deny a claim without first providing medical benefits. *Id.* at *7. The appeals board further held that, to succeed in an Expedited Hearing where the employer denies compensability, "the employee must come forward with sufficient evidence from which the trial court can determine that the employee likely will prove a compensable 'injury by accident.'" *Id.*

In *McCord,* the employee asserted that the employer's denial of her claim without sending her to a doctor prevented her from establishing her claim by expert medical opinion. In fact, the employee limited her request for relief at the Expedited Hearing to the provision of a panel from which she could select a physician to address causation. *Id.* at *8. *Despite the absence of expert medical opinion on the issue of causation,* the

6

appeals board found that the employee was entitled to a panel. In support of its position, the appeals board noted that the employee testified without contradiction that she felt pain while lifting boxes on the job, reported her symptoms promptly, and, in the days following her report of injury, obtained treatment on her own for her alleged work injury. *Id.* at \*8.

The Court notes similarity between the facts here and those in *McCord.* Amazon introduced neither testimony nor evidence that rebutted Mr. Callahan's testimony that he injured his left shoulder while working for Amazon. Amazon accepted the credibility of Mr. Callahan's report of injury to the extent that it sent him to Amcare, where he received treatment. As in *McCord,* Mr. Callahan seeks a panel so he can select a physician to address the causation issues that his claim presents. In view of the principles outlined in *McCord,* the Court finds that Amazon must provide Mr. Callahan a panel from which he can select a physician for treatment and evaluation of his left-shoulder symptoms.

In finding that Amazon must provide Mr. Callahan a panel, the Court also takes into consideration the "last injurious injury rule." The Tennessee Supreme Court adopted this rule in the case of *Baxter v. Smith,* 364 S.W.2d 936 (Tenn. 1962), wherein it held, "the most recent injury causally related to the employment renders the employer at that time liable for full compensation." The rule has stood the test of time. In *Crew v. First Source Furniture Group,* 259 S.W. 3d 656, 667 (Tenn. 2008), the Supreme Court cited *Baxter* approvingly, holding, "in determining which of two successive insurers is liable in a workers' compensation case, the insurer at the time of the employee's last injurious exposure is liable for the injury." *Id.*

In view of the above authority, the Court finds that, despite the fact Mr. Callahan experienced pain in his left shoulder while working at Amazon's facility as an Integrity employee, it is appropriate for Amazon to provide medical benefits since Mr. Callahan's most recent incident of work-related left-shoulder pain occurred while he was an Amazon employee.

The Court finds unpersuasive Amazon's position that it is not responsible for Mr. Callahan's treatment because, on July 11, 2014, he reported to Amcare that his left shoulder was not hurting. The Court first notes that all treatment Mr. Callahan received at Amcare was provided by EMTs. With a few exceptions that do not include treatment by an EMT, the medical benefits provision of the Tennessee Workers' Compensation Law requires that an employer provide an injured employee treatment by a physician. *See generally* Tenn. Code Ann. § 50-6-204 (2014). Accordingly, the Court finds that Amazon did not satisfy its statutory obligation to provide medical treatment of a reported work injury by sending Mr. Callahan for treatment by an EMT.

Additionally, the Court finds that Mr. Callahan's report that he was pain-free on a single date is not conclusive proof that the July 8, 2014 injury had resolved. Amazon did

not introduce testimony or evidence that rebutted Mr. Callahan's testimony that his left-shoulder pain worsened as he continued to work for Amazon and that he currently experiences pain for which he seeks treatment. The Court finds that Amazon can adequately address its concern that Mr. Callahan does not currently require treatment for a left-shoulder injury at Amazon by asking a panel physician to consider these issues.

**IT IS, THEREFORE, ORDERED** as follows:

1. Amazon or its workers' compensation carrier shall provide medical care for Mr. Callahan's injuries as required by Tennessee Code Annotated section 50-6-204 (2014), to be initiated by Amazon or its workers' compensation carrier promptly providing Mr. Callahan a panel.

2. This matter is set for Initial Hearing on November 6, 2015, at 3:00 p.m., Eastern Time.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 31st day of July, 2015.**

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with **Judge Thomas Wyatt, Court of Workers' Compensation Claims, on November 6, 2015, at 3:00 p.m. Eastern Time. You must call 615-741-3061 or toll free at 855-747-1721 to participate in the Initial Hearing.**

8

**Please Note:** <u>You must call in on the scheduled date/time to participate.</u> **Failure to call in may result in a determination of the issues without your further participation.**

<u>Right to Appeal:</u>

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten (10) calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten (10) calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Court Clerk may submit the record to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk

9

within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 31st day of July, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Franklin Chancey, Attorney | | | X | franklin@cklplaw.com |
| Marianna Jablonski, Attorney | | | X | mljablonski@mijs.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov